# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH WATSON, | ) | |
| | ) | Civil Action No. 12 – 35J |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| GERALD L. ROZUM, *et al.*, | ) | |
| | ) | ECF No. 21 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

For the following reasons, it is respectfully recommended that the Motion to Dismiss filed by Defendants Coutts, Dupont, Gehlmann, Glass, Hainsworth, Rozum, Simosko, and Snyder (ECF No. 21) be granted to the extent that (1) Plaintiff's Complaint should be dismissed with prejudice as to Defendants Rozum, Gehlmann, Glass, and Hainsworth; and (2) Plaintiff's Due Process, Fourth Amendment, Takings Clause, and Violation of Prison Policy claims should be dismissed with prejudice. The sole remaining claims for disposition should be Plaintiff's retaliation claims against Defendants Dupont, Simosko, Snyder, and Coutts.

### II.  REPORT

Plaintiff, Joseph Watson ("Plaintiff"), is a Pennsylvania state prisoner currently incarcerated at the State Correctional Institution at Somerset ("SCI-Somerset"). He initiated this action on February 15, 2012, pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983. Plaintiff's Complaint and Supplement to Complaint were docketed on February 17, 2012.

(ECF Nos. 3, 5.) He alleges violations of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Takings Clause of the Pennsylvania Constitution for deprivation of his personal property and retaliatory misconduct. He names the following individuals as Defendants: Gerald L. Rozum (Superintendent of SCI-Somerset), Daniel Gehlmann (Deputy Superintendent for Facilities Management), Joseph Dupont (Hearing Officer), Leo Glass (Major), Melissa Hainsworth (Major), Simosko (Security Captain), Snyder (Security Captain), and Coutts (Security Officer). Defendants filed a Motion to Dismiss (ECF No. 21) on May 10, 2012, and Plaintiff filed a Response in Opposition to the Motion to Dismiss on June 4, 2012 (ECF No. 23). For the following reasons, the Motion to Dismiss should be granted.

### A. Plaintiff's Allegations

Plaintiff alleges that on December 6, 2011, his cell was searched by Corrections Officers Kline and Leleux during which time Officer Kline broke his radio's loose antenna. (ECF No. 5 at ¶¶ 12-13.) Plaintiff claims that he had tape at the top of his radio's antenna because it had loosened during his transfer from Michigan to Pennsylvania. Id. at ¶ 14. He alleges that during the search, Officer Kline pushed the antenna all the way into the radio and then pulled it out beyond its limit, breaking off the top portion of the antenna. Id. at ¶¶ 13, 15. When Officer Kline attempted to leave with just the top portion of the antenna, Plaintiff demanded that he take the entire radio in order to have the antenna repaired. Id. at ¶ 15. Officer Kline informed Plaintiff that he would have to issue him a confiscation slip to take the entire radio, and Plaintiff stated that he did not care so long as Officer Kline filed an incident report and had the antenna repaired. Id. Plaintiff alleges that Officer Kline agreed. Id.

Plaintiff claims that he gave Officer Kline his radio and the two of them proceeded to the guard's desk to fill out the necessary paperwork. Id. at ¶ 16. However, instead of filling out both the confiscation slip and incident report, Officer Kline filled out only the confiscation slip and told the security captain that the radio antenna was already broken when he searched Plaintiff's cell. Id. Plaintiff then had a verbal confrontation with four guards and Defendant Simosko, the security captain overseeing the block searching, then went to his cell to retrieve a pen and paper in order to take down the names of Officers Kline and Leleux so as to file a grievance regarding the incident. Id. When Plaintiff returned to the guard's desk, Defendant Simosko informed Plaintiff that he could not have a grievance form. Id. However, Plaintiff states that he filed a grievance against the officers later that day.

Plaintiff was later called to the security office where Defendants Simosko and Snyder allegedly ordered Defendant Coutts to issue Plaintiff a misconduct. Id. at ¶ 17. Plaintiff claims he was informed that the misconduct was issued because he gave Defendant Simosko and Officer Kline a "hard time" about wanting an incident report filed regarding Officer Kline breaking his radio's antenna. Id. However, the misconduct, which Plaintiff attached to his Complaint, indicates that Plaintiff received the misconduct for altering the antenna on his radio. (ECF No. 3-1 at 2.) Plaintiff claims that the misconduct was issued out of retaliation for requesting a grievance form in order to complain about Officer Kline's conduct involving his radio. (ECF No. 5 at ¶¶ 16-18, 32.) He further claims that Defendants' strategy for issuing him the misconduct was to ultimately deprive him of his radio in violation of his rights under the Fourth and Fourteenth Amendments and the Takings Clause of the Pennsylvania Constitution. Id. at ¶ 32.

Plaintiff contends that it was a violation of prison policy for Defendant Coutts to write the misconduct because he was not involved in the incident involving the radio and there was no indication that he received his information from any staff member who was involved. Id. at ¶ 18. He claims that, pursuant to policy, Officer Kline should have been the one to write the misconduct. Id. at ¶ 22. He further alleges that Defendant Snyder approved the misconduct out of retaliation for a prior lawsuit Plaintiff filed against him for an incident that occurred in 2008. Id. at ¶ 20. He also alleges that Defendants Snyder, Simosko, and Coutts issued him the misconduct in order to keep his $42 radio and keep them from having to replace the antenna. Id. at ¶¶ 21-22.

Plaintiff had his disciplinary hearing involving the misconduct on December 8, 2011, at which time Defendant Dupont acted as Plaintiff's hearing examiner. Id. at ¶ 24. Plaintiff was found guilty of the misconduct and he was sanctioned to the revocation of his confiscated radio. (ECF No. 21-2 at 1.) Plaintiff claims that his disciplinary hearing violated procedural due process protections. (ECF No. 5 at ¶ 24.) Specifically, he claims that Defendant Dupont was neither fair nor impartial because Plaintiff had previously sued him in 2009. Id. Plaintiff alleges that, at the hearing, Defendant Dupont did not produce Plaintiff's radio for examination but instead produced two pictures of a radio that Plaintiff claims was not his own. Id. at ¶ 25. Plaintiff claims that the presence of his radio would have supported his defense that his radio was not damaged and therefore Defendant Dupont would have returned it to him. Id. He asserts that Defendant Dupont found him guilty of the misconduct out of retaliation for the prior lawsuit Plaintiff filed against him in 2009 and in order to keep Plaintiff's radio. Id. Plaintiff further claims that no reliable evidence was presented at his disciplinary hearing which would support the finding of guilt. Id. at ¶ 26.

Plaintiff claims that Defendants Hainsworth, Glass, Gehlmann, and Rozum violated his rights by voting to uphold Defendant Dupont's decision on appeal. Id. at ¶ 29-31. Finally, Plaintiff claims that his rights were violated because he was not given the option to send his radio home, give it to charity, or destroy it pursuant to prison policy. Id. at ¶ 27, 29.

### B. Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or

identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### C. Discussion

With the exception of Plaintiff's retaliation claims, Defendants move for dismissal of all claims for numerous reasons, each of which will be discussed *seriatim*.

**1. Personal Involvement**

Defendants assert that Plaintiff has failed to state a claim against Defendants Dupont, Hainsworth, Glass, Gehlmann, and Rozum based on their lack of personal involvement in any alleged wrongdoing. To establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." Id.

Additionally, a supervisory defendant can be held liable if he or she played an "affirmative part" in the complained-of misconduct. *See* Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). Recently, the Third Circuit specified certain instances whereby a supervisor could be liable in a section 1983 action. In Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60 (3d Cir. 2011), the court stated:

> . . . "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also*, *e.g.*, Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) ("Instead, Santiago's allegations appear to invoke a theory of liability under which 'a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'") (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)) (footnote omitted)). "It is also possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." Baker v. Monroe Township, 50 F.3d 1186, 1191 n.3

(3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)). We further indicated that a supervisor may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct. *See*, *e.g.*, Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

Argueta, 643 F.3d at 72.

Defendants Hainsworth, Glass, and Gehlmann were members of Plaintiff's Program Review Committee ("PRC") assigned to review Plaintiff's misconduct appeal. Plaintiff's only allegation against these Defendants is that they violated his rights by voting to uphold Defendant Dupont's decision in Plaintiff's disciplinary hearing. He also claims that Defendant Rozum violated his rights for upholding the PRC's decision on appeal. However, the fact that these Defendants responded unfavorably to Plaintiff on appeal of his disciplinary hearing does not establish the requisite personal involvement for liability in the alleged issuance of a retaliatory misconduct or otherwise under § 1983 for the underlying unconstitutional conduct. *See* Rode, 845 F.2d at 1208; *see also* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); Manns v. Bledsoe, No. 10-1564, 2011 U.S. Dist. LEXIS 102268, at * 13 (M.D. Pa. Sept. 12, 2011); Mincy v. DeParlos, No. 08-0507, 2011 U.S. Dist. LEXIS 31168, at *21-22 (M.D. Pa. Mar. 24, 2011); Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist. LEXIS 25916, at *17-19 (M.D. Pa. Mar. 14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Haynes v. Moore, No. 09-4958, 2010

U.S. Dist. LEXIS 62789, at *7 (E.D. Pa. June 23, 2010); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, at *22 (W.D. Pa. Mar. 25, 2009); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, at *13-14 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, at *6-7 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Moreover, mere concurrence in the prison administrative appeal process does not implicate a constitutional concern because there is no constitutional right to administrative review of prison disciplinary proceedings. *See* Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (holding that administrative review of prison disciplinary hearings is not constitutionally guaranteed and, therefore, plaintiff's claims with respect to the Program Review Committee's decision did not rise to constitutional significance); Harmon v. Divirgilis, No. 04-1813, 2005 U.S. Dist. LEXIS 2284, at *11 (E.D. Pa. Feb. 16, 2005) (there is no constitutional right to administrative review of prison disciplinary proceedings). Accordingly, Defendants Hainsworth, Glass, Gehlmann, and Rozum should be dismissed from this action with prejudice.

However, the Court finds that Plaintiff has alleged the requisite personal involvement with respect to Defendant Dupont and his alleged retaliation in finding Plaintiff guilty of the misconduct for the filing of a prior lawsuit. As such, Defendant Dupont should not be dismissed for lack of personal involvement.

  2. **Retaliation**

Plaintiff alleges that he was retaliated against for numerous reasons. First, Plaintiff alleges that he was issued the misconduct by Defendants Simosko, Snyder, and Coutts in

9

retaliation for requesting to file a grievance against Officer Kline. He also alleges that Defendant Snyder approved the misconduct and that Defendant Dupont found him guilty of the misconduct in retaliation for lawsuits Plaintiff had previously filed against them. Defendants do not address this claim in their Motion to Dismiss and therefore it will not be addressed at this time.

### 3. Procedural Due Process

In analyzing any procedural due process claim of this type, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once it is determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Protected liberty or property interests generally arise either from the Due Process Clause or from some state-created statutory entitlement. *See* Board of Regents v. Roth, 408 U.S. 564, 575 (1972).

#### a. Deprivation of Property

Plaintiff alleges that Defendants deprived him of his radio in violation of due process. However, Plaintiff's due process claim necessarily fails "if a meaningful post-deprivation remedy is available for the loss." Hudson v. Palmer, 468 U.S. 517, 533 (1984). In this respect, the Third Circuit Court of Appeals has held that the Pennsylvania Department of Corrections' grievance procedure "provides an adequate post-deprivation remedy" in satisfaction of the Due Process Clause for prisoners making claims for damage to or loss of personal property. Durham v. Dep't of Corr., 173 F. App'x 154, 157 (3d Cir. 2006); *see* McEachin v. Beard, 319 F. Supp. 2d 510, 514-15 (E.D. Pa. 2004) (citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422

(3d Cir. 2000)). Furthermore, it is not relevant whether the alleged loss of property occurred as the result of negligent or intentional conduct. Hudson, 468 U.S. at 533.

Here, Plaintiff's due process claim regarding the deprivation of his radio fails because an adequate post-deprivation process was available to Plaintiff through the prison grievance procedure. Therefore, Defendants' Motion to Dismiss should be granted in this regard and this claim should be dismissed with prejudice.

**b. Disciplinary Hearing**

Plaintiff alleges that his due process rights were violated in the context of his disciplinary hearing. Specifically, he alleges that his hearing examiner, Defendant Dupont, was neither fair nor impartial. He also alleges that he should not have been found guilty of the misconduct because the pictures presented in the hearing that supported the finding of guilt were of a radio that was not his own. The threshold question presented by Plaintiff's claim is whether the sanction imposed, the revocation of his radio, impacted a constitutionally protected liberty interest, which would invoke the procedural due process protections he alleges he was denied.[1]

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-

---

[1] In Wolff v. McDonell, 418 U.S. 539 (1974), the Supreme Court set forth the following five requirements of due process in a prison disciplinary proceedings that may result in the loss of a liberty interest: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional security or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id. at 563-71. Where the due process requirements of Wolff are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985).

created liberty interests could arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483.

In this case, it is undisputed that the sole sanction imposed against Plaintiff was the revocation of his radio. Since this sanction, standing alone, does not entail an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, the penalty imposed here does not implicate a liberty interest which triggers due process protection under the Fourteenth Amendment. Accordingly, Plaintiff's claim should be dismissed with prejudice.

**4. Fourth Amendment**

Plaintiff alleges that the taking of his radio was an unreasonable seizure under the Fourth Amendment.[2] The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. Cont. amend. IV. "A Fourth Amendment 'seizure' of personal property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 209 (3d Cir. 2011) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). However, the Supreme Court has held that "the Fourth Amendment has no applicability to prison cells." Hudson, 468 U.S. at 536; *see also* Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001) ("The Hudson court confirmed that the Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."). Thus, Plaintiff is unable to maintain a claim based upon the Fourth Amendment, and the same should be dismissed with prejudice.

---

[2] Defendants do not address Plaintiff's Fourth Amendment claim in their Motion to Dismiss. Nevertheless, the undersigned recommends that the Court *sua sponte* dismiss his claim with prejudice pursuant to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915A(b)(1); §1915(e)(2)(B)(ii).

### 5. Takings Clause of the Pennsylvania Constitution

Plaintiff alleges that the taking of his radio without compensation violated the Takings Clause of the Pennsylvania Constitution.

To the extent Plaintiff seeks monetary relief from Defendants for state constitutional violations, the undersigned notes that the Supreme Court of Pennsylvania has not yet ruled on the issue of whether the Pennsylvania Constitution provides a private cause of action for monetary damages for state constitutional violations. However, the Pennsylvania Commonwealth Courts as well as federal courts explicitly hold that no such right exists.[3] *See*, *e.g.*, Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2001) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."); Bodnar v. Wagner, 2010 U.S. Dist. LEXIS 289, at *20-21 (M.D. Pa. Jan. 5, 2010) (agreeing with other courts that "there is no private cause of action available for seeking monetary damages for violations of the Pennsylvania Constitution"); Taylor v. Moletsky, 2010 U.S. Dist. LEXIS 6260 (E.D. Pa. Jan 26, 2010) (same); Jones v. City of Philadephia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("neither statutory, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution"), *appeal denied*, 909 A.2d 1291 (2006). Accordingly, Plaintiff's claim for monetary damages against Defendants for alleged violations of the Pennsylvania Constitution fails, and it should be dismissed with prejudice.

---

[3] When making a prediction as to how the Pennsylvania Supreme Court would rule, the court "must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," among other sources. Knopick v. Connelly, 639 F.3d 600, 606 (3d Cir. 2011) (quoting Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010)).

Although claims for money damages for violations of the Pennsylvania Constitution are barred, equitable remedies (such as declaratory and injunctive relief) are available. *See* Pocono Mt. Charter Sch., 442 F. App'x at 688 (citing Moeller v. Bradford County, 444 F. Supp. 2d 316, 320-21 (M.D. Pa. 2006); Jones, 890 A.2d at 1216)). Nevertheless, Plaintiff fails to state a valid claim under the Takings Clause of the Pennsylvania Constitution. In this regard, the Takings Clause of the Pennsylvania Constitution provides the same protections offered by the United States Constitution and, consequently, Pennsylvania courts have analyzed state takings claims under federal takings case law. *See* Machipongo Land & Coal Co., v. Dept. of Envtl. Prot., 799 A.2d 751, 763 n.7 (Pa. 2002). The Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use without just compensation. U.S. Cont. amend. V. It is made applicable to the states through the Fourteenth Amendment. *See* Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160 (1980). At most, Plaintiff has alleged that his radio was confiscated for private use by Defendants and/or officers at the prison. The Takings Clause, however, is violated only when private property is taken for a public use, *i.e.*, appropriated to a public benefit, not for private or individual use as alleged. *See* Scott v. Phila. Hous. Auth., No. 10-4723, 2011 U.S. Dist. LEXIS 50541, at *19-20 (E.D. Pa. May 11, 2011). Moreover, Plaintiff's radio was confiscated and found to be contraband because it was altered in violation of prison regulations. This type of deprivation of property is not a "taking" under the Fifth Amendment. *See* Tormasi v. Hayman, 443 F. App'x 742, 746 (3d Cir. 2011) (citing Savko v. Rollins, 749 F. Supp. 1403, 1412-14 (D. Md. 1990), holding that, under prison regulation, "the State may confiscate property not for the beneficial use of the public, but rather as a quintessential police power function: the orderly and secure operation of the State's prisons")). Accordingly, the Plaintiff's Takings Clause claim should be dismissed with prejudice.

## 6. Violation of Prison Policy

Although not raised as a specific claim within his Complaint, Plaintiff alleges that he was denied due process because Defendants allegedly failed to abide by their own prison policies. Specifically, he asserts that it was a violation of DOC policy for Defendant Coutts to issue Plaintiff the misconduct because he was not involved in the underlying incident and there was no indication that he received the information relied upon by a staff member who was involved.[4] He further asserts that Defendants denied him due process by violating DOC policy which required that they give him the option to mail his radio home or donate it to charity before it was confiscated and destroyed. Plaintiff, however, misunderstands his due process rights.

The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations . . . ."); Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987) (the adoption of mere procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process); Shango v. Jurich, 681 F.2d 1091, 1101-02 (7th Cir. 1982) ("[A] state created procedural right is not itself a liberty interest . . . . States may decide to engage in such proceedings, but the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake."). Thus, violations of state statutes or rules or regulations that require certain procedures, which are not compelled by the Federal Constitution because there is no liberty

---

[4] Pennsylvania DOC policy, DC-ADM 801, section 1.B.1.b. states that "Part 1 [of the misconduct report] shall be written by either the charging staff member or contract service provider who has personal knowledge of the rule violation or by a staff member at the direction of a person who has personal knowledge of the misconduct." Pennsylvania DOC Policy Statement, DC-ADM 801, section 1.B.1.b. (effective June 13, 2008).

interest that those state mandated procedures protect, do not make out a claim under Section 1983.  Hayes v. Muller, No. 96-3420, 1996 U.S. Dist. LEXIS 14987, at *20 n.5 (E.D. Pa. Oct. 10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures"); Rowe v. Fauver, 533 F. Supp. 1239, 1246 n.10 (D. N.J. 1982) ("[A] failure by state officials to follow state procedural regulations not independently required by the Constitution fails to state a claim under the Due Process Clause.")  Due process does not require that a misconduct report be written by a staff member directly involved in the underlying incident or that it be apparent on the face of the misconduct report that the issuer received their information from someone who was directly involved in the incident.  Therefore, Plaintiff's claim should be dismissed with prejudice to the extent he attempts to argue a violation of procedural due process for Defendants' failure to abide by DOC policy.

Moreover, to the extent Plaintiff seeks to recover directly because of these deviations from prison policies, he fails to state a claim upon which relief can be granted.  State agency guidelines do not, in and of themselves, create a right, and do not have the force of law.  *See* Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); *see also* Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation).  As such, a violation of internal policy does not automatically rise to the level of a Constitutional violation.  Whitcraft v. Township of Cherry Hill, 974 F. Supp. 392, 398 (D. N.J. 1996) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988); Jones v. Chieffo, 833 F. Supp. 498, 505-06 (E.D. Pa. 1993)); Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional

violation."); Walker v. Zenk, No. 01-1644, 2007 U.S. Dist. LEXIS 96351, at *29-30 n.19 (M.D. Pa. Nov. 15, 2007) (*adopted in part and rejected in part* by 2008 U.S. Dist. LEXIS 9086 (M.D. Pa. Feb. 7, 2008) ("[A]lleged violations of prison policies do[] not rise to the level of a Constitutional claim."); Estrella v. Hogsten, No. 06-1340, 2007 U.S. Dist. LEXIS 51208, at *21 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation). Consequently, any claims by Plaintiff seeking redress solely for the departure from DOC policy should be dismissed with prejudice.

### III. CONCLUSION

For the reasons stated above, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 21) be granted to the extent that (1) Plaintiff's Complaint should be dismissed with prejudice as to Defendants Rozum, Gehlmann, Glass, and Hainsworth; and (2) Plaintiff's Due Process, Fourth Amendment, Takings Clause, and Violation of Prison Policy claims should be dismissed with prejudice. The sole remaining claims for disposition should be Plaintiff's retaliation claims against Defendants Dupont, Simosko, Snyder, and Coutts.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: October 29, 2012

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Joseph Watson
EF-9383
SCI Somerset
11600 Walters Mill Road
Somerset, PA  15510-0001
*Via U.S. Postal Mail*

Counsel of Record
*Via ECF Electronic Mail*